United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE BRICKLAYERS LOCAL NO. 3 PENSION TRUST, et. al., <br><br> Plaintiffs, <br><br> v. <br><br> KENNETH HUDDLESTON, <br><br> Defendant. | Case No: 10-1708 JSC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT (Dkt. No. 55)** |

In this enforcement action brought under the Employee Retirement Income Security Act ("ERISA"), Plaintiffs bring a Motion for Default Judgment seeking entry of default judgment, liquidated damages, attorney's fees and costs, and an injunction requiring Defendant to post a surety bond. The Court finds that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7–1(b). For the reasons given below, the motion is GRANTED in part and DENIED in part.[1]

---

[1] The parties consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 4, 26.)

United States District Court
Northern District of California

# BACKGROUND

Plaintiffs in this action comprise the International Union of Bricklayers and Allied Craftsmen, AFL-CIO, Local No. 3 ("Union") and the following trust funds ("Trust Funds"): Trustees of the Bricklayers Local No. 3 Pension Trust, Trustees of the Bricklayers Local No. 7 Pension Trust, Trustees of the Bricklayers Local No. 3 Health and Welfare Trust, Trustees of the Bricklayers and Allied Crafts Local No. 3 Apprentice Training Trust, and Trustees of the International Union of Bricklayers and Allied Craftsmen Pension Fund.

Defendant, an employer within the meaning of ERISA Section 3(5) and 29 U.S.C. § 1002(5), is an individual doing business as Gold Coast Masonry, a sole proprietorship.  Defendant is a signatory to a collective bargaining agreement ("CBA") between the Union and the Northern California Masonry Contractors Multi-Employer Bargaining Association.  (Dkt. No. 55-5.)  The CBA requires Defendant to make regular contributions to the Trust Funds, who are third party beneficiaries of the CBA, based on the hours worked by Defendant's employees.  (*Id.* at Art. VII.) Defendant further agreed to pay liquidated damages for each delinquent contribution; specifically, liquidated damages incur at the greater of $100 or 10% of the delinquent contributions, and increase to 20% if the delinquency persists for over 30 days.  (*Id.*)  In addition, interest accrues on the delinquent contributions at a 10% annual rate.  (*Id.*)

The Second Amended Complaint ("SAC"), filed August 19, 2010, alleges that Defendant has failed to pay contributions due for work performed by its employees during the months of May and June 2010.  (Dkt. No. 11 ¶ 10.)  Since the filing of the SAC, however, Plaintiffs assert that Defendant has made the payments for those months, albeit late.  (Dkt. No. 55 at 5.)  The SAC also alleges that Defendant has failed to timely pay for work performed in the months of October 2008 through June 2010.  (Dkt. No. 11 ¶ 11.)

Although Defendant has appeared in this action, the Court granted Plaintiffs' motion to strike Defendants' answer to the SAC "[i]n light of Defendant's failure to comply with a court order, protracted absence and unavailability, and apparent disinclination to defend this action."  (Dkt. No. 50 at 2.)  Defendant's default was entered by the Clerk pursuant to Rule 55(a) of the Federal Rules of Civil Procedure on June 1, 2012.  (Dkt. No. 52.)  In the motion for default judgment, Plaintiffs

1   request: 1) liquidated damages totaling $10,494.84 for Defendant's delinquent contributions and

2   reports from October 2008 through August 2011; 2) liquidated damages totaling $1,800 for

3   Defendant's failure to submit reports from September 2011 to February 2013; 3) attorney's fees of

4   $27,757.98 and costs of $645; and 4) an order requiring that Defendant provide a surety bond in the

5   amount of $25,000.  (Dkt. No. 55 at 5.)  Plaintiffs served Defendant with the motion by mail, but it

6   was returned as undeliverable.  Defendant has not appeared or responded to the motion, and the

7   deadline for opposing the motion has passed.  *See* Civil L.R. 7-3(a).

**DISCUSSION**

**I.    Jurisdiction and Service of Process**

      When a court is considering whether to enter a default judgment it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties."  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  Here, the Court has subject matter jurisdiction pursuant to 29 U.S.C. § 185 (granting labor union organizations power to sue employers in Federal court) and § 1132 (empowering ERISA plan fiduciaries to bring civil actions to enforce plan terms).  The Court has personal jurisdiction because Defendant is a California resident who engages in business activities in the Northern District of California.

      A court is also required to "assess the adequacy of the service of process on the party against whom default is requested."  *Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters*, No. 00–0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001).  Service was adequate here since Defendant was personally served in July 2010.  (Dkt. No. 6.)

**II.    Default Judgment**

      After entry of default, a court may grant default judgment on the merits of the case.  *See* Fed. R. Civ. P. 55.  The factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party.  *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).  "The district court's decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A court should consider the following factors in determining whether to enter default judgment:

United States District Court
Northern District of California

3

(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The majority of the *Eitel* factors support default judgment. First, if the motion were to be denied, then Plaintiffs would likely be left without a remedy given Defendant's failure to pursue this action. *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Second, because the Court struck Defendant's answer to the SAC, the possibility of a dispute concerning material facts is unknown. Moreover, the answer does not provide the Court with any meaningful insight into Defendant's dispute of the material facts. Third, Although Plaintiffs have diligently attempted to locate Defendant, he has ceased responding to Plaintiffs and the Court and correspondence to Defendant is returned as undeliverable. There is no indication that his failure to defend this action was the result of excusable neglect. Fourth, the sum of money being sought by Plaintiffs is reasonable in that it is tailored to the specific misconduct of Defendant; namely, Defendant's failure to timely pay or report the contributions, which he had assumed responsibility for under the CBA. *See Pepsico*, 238 F. Supp. 2d at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct"). Finally, although the seventh *Eitel* factor, which favors decisions on their merits, weighs against default judgment, the Court finds that this factor is not dispositive.

Having determined that on balance the *Eitel* factors discussed above support Plaintiffs' motion, the Court turns to the merits of Plaintiffs' substantive claims and the sufficiency of the evidence (the second and third *Eitel* factors). These factors essentially require Plaintiffs to state a claim on which it may recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Plaintiffs have adequately stated a claim for relief.

Plaintiffs claim that Defendant violated ERISA section 515 by failing to provide timely payments and reports pursuant to the CBA. These allegations are sufficient to state a claim under Federal Rule of Civil Procedure 8(a). The claims are further substantiated by the factual record. As discussed above, Plaintiffs have offered evidence that Defendant entered into the CBA. The CBA

imposes liability on delinquent employers for liquidated damages, unpaid interest and attorney's fees in addition to any unpaid contributions.  Plaintiffs' SAC alleges that Defendant has failed to timely pay for work performed in the months of October 2008 through June 2010.  Plaintiffs provided an accounting of liquidated damages and attorneys' fees incurred by Defendant in support of the Motion.  (*See* Dkt. No. 55-2; Dkt. No. 55-11.)  Although the accounting records reveal that Defendant reported "no work" for some of the months—and thus Defendant was not untimely in paying for work for those months, as the SAC alleges—those reports were nevertheless submitted late and are accordingly assessed liquidated damages pursuant to the CBA.   In addition, as the sole owner of Gold Coast Masonry, Defendant "is personally liable for all debts and responsibilities incurred by the business." *Zoom Elec., Inc. v. Int'l Broth. of Elec. Workers, Local 595*, 2012 WL 951778, at *11 (N.D. Cal. Mar. 20, 2012) (internal quotation marks omitted).  Accepting all factual allegations as true, Plaintiffs have stated a claim for relief.

Defendant breached its agreement with Plaintiffs when it failed to timely report or timely pay contributions for the period listed above.  Defendant's default triggered the filing of the instant suit for recovery, which Defendant has ceased defending.  Based on the foregoing, the Court concludes that Plaintiffs are entitled to default judgment on this claim.  Next, the Court must consider what constitutes an appropriate remedy in this case.

### III.    Damages, Attorney's Fees, and Audit

Once a court has determined default liability, the plaintiff must then establish that the requested relief is appropriate.  *See Geddes*, 559 F.2d at 560.  Under ERISA, an employee benefit plan that obtains judgment in its favor in an action under 29 U.S.C. § 1132 shall be entitled to the following forms of relief: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages, not in excess of 20 percent of the unpaid contributions; (4) reasonable attorney's fees and costs; and (5) other legal or equitable relief in the discretion of the court.  *See id.* § 1132(g)(2) (stating that the court "*shall* award" these types of relief) (emphasis added).  The Court must use its discretion and consider Plaintiffs' requested relief in light of the statute.[2]

---

[2]  Plaintiffs are not seeking any interest owed on the untimely contributions.

United States District Court
Northern District of California

**A.      Damages**

Plaintiffs seek to recover liquidated damages payment for each month from October 2008 to February 2013.  As an initial matter, the Court notes that while some of the liquidated damages were incurred after the filing of this lawsuit, the Court may nonetheless award Plaintiffs those damages. *See Roofers Local Union No. 81 v. Wedge Roofing*, 811 F. Supp. 1398, 1401-02 (N.D. Cal. 1992); *see also Bay Area Painters v. Alta Specialty*, 2008 WL 114931, at *4 (N.D. Cal. Jan. 10, 2008) ("Courts in the Ninth Circuit have made a limited exception to [the requirement that default judgment be constrained by the remedies sought in the complaint] for delinquent contributions that come due *after* a complaint is filed on the basis that such an approach is consistent with the legislative intent underlying ERISA.") (emphasis in original).

In claims brought for delinquent contributions under 29 U.S.C. § 1145, courts have awarded liquidated damages and interest under two different theories: 1) statutory damages, awarded as a matter of right under 29 U.S.C. § 1132(g), and 2) contract damages, provided the award comports with common law standards.  *See Idaho Plumbers & Pipefitters Health and Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 216-17 (9th Cir. 1989); *see also Parkhurst v. Armstrong Steel Erectors, Inc.*, 901 F.2d 796, 797-98 (9th Cir. 1990) (per curiam) (following *Idaho Plumbers*).

**1.      Statutory Award**

Section 1132(g)(2) provides Plaintiffs with liquidated  damages and interest as a matter of right on delinquent, unpaid contributions, but the liquidated damages must be equal to or less than 20 percent of unpaid contributions.  29 U.S.C. § 1132(g)(2); *see also Bd. of Trs. of Laborers Health & Welfare Trust Fund for N. Cal. v. Atoll Topui Island, Inc.*, 2007 WL 174409, at *7 (N.D. Cal. Jan. 22, 2007).  ERISA requires an award of liquidated damages, in addition to the unpaid contributions, if "(1) the fiduciary obtains a judgment in favor of the plan, (2) *unpaid* contributions exist at the time of suit, and (3) the plan provides for liquidated damages." *Idaho Plumbers*, 875 F.2d at 215 (emphasis in original).  Plaintiffs have clearly satisfied two of the three *Idaho Plumbers* factors.  First, by virtue of this order, the fiduciary has obtained judgment in favor of the plan, and second, the CBA provides for assessment of liquidated damages.

United States District Court
Northern District of California

As for the remaining *Idaho Plumbers* factor, which requires unpaid contributions at the time of suit in order to recover statutory damages, Plaintiffs identify only two months where unpaid contributions existed at the time of the suit.  The express language of *Idaho Plumbers* does not answer whether a plaintiff may recover statutory liquidated damages on amounts paid late before the lawsuit was filed, provided at least some—or even one—payment was unpaid at the time of filing. 875 F.2d at 215 (requiring merely that "unpaid contributions exist at the time of suit" for a mandatory award under ERISA).

There is conflict within this District on the specific meaning of the unpaid contributions requirement under *Idaho Plumbers*.  Some decisions have interpreted the language quite literally, as have Plaintiffs here, in that as long as *any* unpaid contributions exist at the time of filing, the door is open for all damages assessed to an employer's account, regardless of whether the contributions were eventually paid or remain outstanding.  *See, e.g., Nw. Adm'rs., Inc. v. AD Auto. Distrib. Inc.*, 2006 WL 1626940, at *5 (N.D. Cal. June 12, 2006) (finding some unpaid contributions at time of filing sufficient for award of liquidated damages on additional, late but paid contributions); *Roofers Local*, 811 F. Supp. at 1401-02 (allowing recovery of statutory damages for late payments which came due after suit was filed, for reasons of efficiency).  However, other decisions allowed statutory liquidated damages only for those payments that were actually unpaid when the suit was filed.  *See, e.g., Bd. of Trs. of Laborers Health & Welfare Trust Fund for N. Cal. v. Perez*, 2011 WL 6151506, at *11 (N.D. Cal. Nov. 7, 2011) ("[C]ourts award damages on contributions that were paid, but paid late [before the suit] on the basis of contract law and federal common law rather than ERISA statutory law."); *Bd. of Trs. v. Udovch*, 771 F. Supp. 1044, 1047 (N.D. Cal. 1991) (holding that "mandatory liquidated damages under § 1132(g)(2) do not apply" to delinquent contributions paid by the time the suit is filed and requiring recovery under contract theory instead).

This Court concludes that the latter approach is most consistent with the language of section 1132(g) and *Idaho Plumbers*.  Section 1132(g) requires liquidated damages on the amount of unpaid contributions for which a judgment is obtained. 29 U.S.C. § 1132(g)(2)(C)(ii).  Accordingly, Plaintiffs are entitled to statutory liquidated damages under section 1132(g) as to those payments which were unpaid at the time this suit was filed.  Thus, Plaintiffs are entitled to statutory liquidated

damages and interest on the payments for May and June 2010, which were late and unpaid at the time the Complaint was filed.  (Dkt. No. 26 ¶ 15.)  In contrast, Plaintiffs are not entitled to *statutory* liquidated damages for late, but paid, pre-litigation payments.  Nor are Plaintiffs entitled to statutory liquidated damages for months where Plaintiff merely filed an untimely report or no report at all.  The Court therefore awards Plaintiffs $1,322 in statutory liquidated damages for unpaid contributions for the months of May and June 2010.

### 2.   Contract Award

Even where liquidated damages are—or are not—mandated under section 1132(g), the Court may also enter judgment for liquidated damages as a matter of contract.  *See Idaho Plumbers*, 875 F.2d at 1275; *see also Atoll Topui Island, Inc.*, 2007 WL 174409, at *7.  The CBA provides for damages on delinquencies, both for late payments and late reports.  Thus, as a matter of contract law, Plaintiffs may be entitled to liquidated damages as to the late pre-litigation payments and the delinquent reports.

Under *Idaho Plumbers*, liquidated damages are a valid award for breach of contract if (1) it is "very difficult or impossible" to calculate the harm that stems from the breach, and (2) the amount of damages is a "reasonable forecast of just compensation for the harm."  875 F.2d at 217 (internal citations omitted).

Contractual liquidated damages are appropriate here.  First, Plaintiffs' harm is sufficiently difficult to calculate.  *See Udovch*, 771 F. Supp. at 1048 ("When an employer is delinquent in paying contributions into a fringe benefit trust fund, the fund suffers some kinds of harms that are very difficult to gauge.")  The parties' intentions determine whether the second requirement has been satisfied.  *Id.* (internal citations omitted).   They must have made a "good faith effort to set an amount equivalent to the damages they anticipate."  *Id.* (internal citations omitted).  Because the Court is presented with a default, evidence regarding contract formation and the intent of the parties is extremely limited.  Nevertheless, because the Court is required to deem the SAC's allegations admitted and consider the evidence in support of those allegations in the light most favorable to Plaintiffs, the question is whether the record supports the inference that the parties "made a good faith effort to establish a liquidated damages rate that would be a reasonable forecast of just compensation"

8

when entering into the CBA.  *Atoll Topui Island*, 2007 WL 174409, at *8.   The evidence is sufficient

to draw this conclusion.   The CBA provides that "each employer and the Union recognize and

acknowledge that the regular and prompt payment of employer contributions and report forms is

essential to the maintenance of the Trusts, and it would be extremely difficult, if not impractical, to

fix the actual damage and expense to the Trusts."  (Dkt. No. 55-4 at Art. VII.C.)  The CBA further

specifies that these amounts are payable as "liquidated damages and not as a penalty."  (*Id.*)  As

further evidence of reasonableness, Plaintiffs' fixed charge of $100.00 is well within the parameters

allowed under ERISA, 29 U.S.C. § 1132(g)(2), and is not unusual for an ERISA case.  *See, e.g., Bd.*

*of Trs. v. KMA Concrete Constr. Co.*, 2011 WL 4031136, at *7 (N.D. Cal. Aug. 12, 2011) (finding

$150 flat liquidated damages fee reasonable in ERISA case awarding contract damages).

   The Court accordingly awards the balance of Plaintiffs' liquidated damages request as a

matter of contract, with the exception of the $100 requested for the month of July 2011 and the

$1,800 requested for Defendant's failure to file reports from September 2011 to February 2013.

Plaintiffs' records show that on August 12, 2011, Defendant reported no work for July 2011.

Because reports are not deemed delinquent unless filed after the 15th day of the month following the

month subject to the report, the July 2011 report was not delinquent when it was received on August

12.  In addition, the Court denies Plaintiffs' request for $100 in liquidated damages for the months of

September 2011 to February 2013 where no report was filed.  At the hearing, Plaintiffs conceded that

Defendant's business was no longer in operation during this time.  Thus, Plaintiffs had no reason to

expect Defendant to file any report.

   **B.     Attorney's Fees and Costs**

   Where a party is entitled to reasonable attorney's fees by either contract or statute, the court

will determine the amount to be awarded based on reasonable billing rates and time spent.  *See*

*Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987) (referring to this quantum of

reasonableness as the "lodestar").   ERISA also provides for recovery of reasonable attorney's fees

and costs within the discretion of the Court.  29 U.S.C. § 1132(g)(2)(D).

   Pursuant to the CBA, Defendant agreed to pay reasonable attorney's fees and costs

associated with a default.  (Dkt. No. 55-4 at Art. VII.B.)  Plaintiffs' motion requests $27,757.98 in

attorney's fees and $645 in costs.  To substantiate their fees and costs, Plaintiffs' counsel included a declaration detailing the fees.  (Dkt. Nos. 55-10.)  The amount of fees is based on work performed by Conor D. Mack from April 2, 2010 through February 1, 2012,[3] totaling 92.1 hours at an hourly rate of $295.  Although the Court finds the hours worked and the hourly rates reasonable, Plaintiffs seek $27,757.98 in attorney's fees, which does not reflect 92.1 hours at a $295 hourly rate.  Instead, $27,169.50 is the correct amount of attorney's fees, given the hours worked and the billing rate. The Court accordingly awards Plaintiffs attorney's fees in the amount of $27,169.50.

Plaintiffs' cost request of $645 includes costs for filing fees ($350.00) and service fees ($295.00).  Under Civil Local Rule 54–3, an award of costs may include the clerk's filing fee and fees for service of process "to the extent reasonably required and actually incurred."  In addition, the CBA provides for the recovery of all expenses incurred in collection.  (*See* Dkt. No. 55-4 at Art. VII.B.)  Therefore, the Court awards Plaintiffs' costs in full.

C.   **Surety Bond**

Plaintiffs also seek an order from this Court requiring Defendant to post a $25,000 surety bond.  The Court declines to issue such an order.  Plaintiffs contend that the CBA requires Defendant to post the bond upon Plaintiffs' request once Defendant fails to pay required contributions.  The purpose of the surety bond is to guarantee payment of contributions and liquidated damages going forward.  Plaintiffs, however, have failed to provide the Court with the entire relevant CBA provision.  Rather, Plaintiffs provide only an excerpted portion of the provision in the SAC, and an incomplete copy of the CBA in their papers accompanying the motion.  Plaintiffs have thus failed to establish that such a surety bond is required under the CBA.  Further, even if the CBA authorized a surety bond under the circumstances, the Court concludes that an order requiring the posting of the bond would be inconsequential since Defendant's business appears to be out of operation.  The surety bond's purpose of ensuring future payments is not implicated when an employer is no longer in business.

---

[3]  Plaintiffs do not seek fees for legal services incurred in the preparation of the instant motion.  (*See* Dkt. No. 55-10 ¶ 6.)

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**CONCLUSION**

Based on the foregoing, the Court GRANTS in part and DENIES in part Plaintiffs' Motion for Default Judgment.  A separate judgment will follow.

**IT IS SO ORDERED.**

Dated:  May 20, 2013

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge